```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

CHARLES DWIGHT WHITFIELD                                PLAINTIFF

VS.                              CIVIL ACTION NO. 3:11CV744TSL-LRA

CITY OF RIDGELAND,
RIDGELAND POLICE DEPARTMENT,
STATE OF MISSISSIPPI, MISSISSIPPI
DEPARTMENT OF PUBLIC SAFETY,
MISSISSIPPI HIGHWAY PATROL,
COMMISSIONER ALBERT SANTA CRUZ
in his official capacity,
DANIEL SOTO in his official and
individual capacity, AND OTHER
UNKNOWN JOHN and JANE DOES 1-10,
in their official and individual
capacities                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

There are pending before the court three interrelated motions. Initially, defendants State of Mississippi, Mississippi Department of Public Safety and Mississippi Highway Patrol (the State defendants) moved to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on Eleventh Amendment immunity grounds. In response, plaintiff Charles Dwight Whitfield filed a motion to amend his complaint to drop the State of Mississippi, Mississippi Department of Public Safety and Mississippi Highway Patrol as defendants, and to name instead Phil Bryant, Governor of the State of Mississippi, in his official capacity. In the meantime, defendant Commissioner of Public

Safety Albert Santa Cruz, sued in his official capacity, moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The State defendants collectively responded in opposition to that part of plaintiff's motion to amend seeking to add Governor Bryant as a defendant, contending that the amendment to add Governor Bryant would be futile for all the reasons advanced in Commissioner Santa Cruz's motion for judgment on the pleadings. The court, having considered these various motions, concludes defendants' motions should be granted, and plaintiff's motion to amend should be denied.

This case arises from plaintiff's arrest by Officer Daniel Soto on December 7, 2008 in the City of Ridgeland, Mississippi. According to the allegations of his complaint, around 2:35 a.m., Officer Soto, using the pretext of speeding, stopped plaintiff's vehicle. Plaintiff maintains he was not speeding, and that in light of the officer's false statement that his radar had put plaintiff going 55 m.p.h. in a 40 m.p.h. zone, plaintiff invoked his constitutional right to remain silent. Plaintiff states that Officer Soto immediately arrested him for driving under the influence, speeding, and, later, for no proof of insurance. Officer Soto placed plaintiff into custody and took him to the station. Plaintiff refused to submit to a breathalyzer test after being arrested, and consequently, his driver's license was automatically suspended for ninety days pursuant to Mississippi's

2

Implied Consent Law.[1]  Plaintiff was convicted in municipal court, but following a motion for new trial, the charges were dismissed.

Plaintiff filed this action against the City of Ridgeland and Officer Soto, in his official and individual capacities, and against the State of Mississippi, Mississippi Department of Public Safety, Mississippi Highway Patrol and Commission Santa Cruz, in his official capacity, asserting putative claims under 42 U.S.C. § 1983 for violation of his rights under the "Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments."  In substance, as related to the State defendants, plaintiff alleges that although the device has been widely criticized, the State defendants have mandated use of the Intoxilyzer 8000 computer as the accepted instrument for breath tests by law enforcement agencies in the state; that the computer software used by the Intoxilyzer 8000 is faulty, inaccurate, and totally unreliable, and yet, as customized

---

[1] See Miss. Code Ann. § 63-11-5(1) ("Any person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent, subject to the provisions of this chapter, to a chemical test or tests of his breath for the purpose of determining alcohol concentration.  A person shall give his consent to a chemical test or tests of his breath, blood or urine for the purpose of determining the presence in his body of any other substance which would impair a person's ability to operate a motor vehicle."); Miss. Code Ann. § 63-11-5(2) (providing that "failure to submit to such chemical test or tests of his breath shall result in the suspension of his privilege to operate a motor vehicle upon the public streets and highways of this state for a period of ninety (90) days in the event such person has not previously been convicted of a violation of Section 63-11-30").

by the State defendants, the device does not supply the source codes used by the software to determine the criteria to convert the data to a chemical percentage; and that as a result, defendants have no means of tracing any probable errors in the testing. Further, in the event an individual chooses not to take part in an unreliable method to determine his alcohol level, his license is automatically suspended "without any form of review."[2] Based on these allegations, plaintiff demands an award of compensatory and punitive damages, and seeks a declaration that the Implied Consent Law is unconstitutional and an injunction prohibiting the State defendants from continuing to utilize and administer breath tests with the Intoxilyzer 8000.[3]

In their motion to dismiss, the State defendants have correctly contended that plaintiff's claims against them are barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 662-663, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974)

---

[2] As plaintiff puts it,
[T]he State of Mississippi and the Defendants, together, have opened the door to a wrongful conviction of which the Defendant has little opportunity to defend as such is entirely grounded on "evidence" full of errors and defects that can only be equated to false testimony. A read of the statutes as they are currently situated, would force an individual to take an error-filled breath test or face a license suspension without any due process at the hands of the enforcing entities.

[3] In addition to the referenced claims against the State defendants, plaintiff has alleged claims against the City of Ridgeland and Officer Soto for excessive force, improper arrest and incarceration and malicious prosecution.

(holding that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State"); see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 687, 121 L. Ed. 2d 605 (1993) (recognizing that Eleventh Amendment bar extends to State and agencies acting under its control, "arms of the state"); Gazzo v. Miss. Dept. of Public Safety, Civ. Action No. 1:09cv719-LG-RHW, 2011 WL 1841258, 1 (S.D. Miss. May 13, 2011) (holding Mississippi Department of Public Safety is arm of the state); King v. Mississippi Highway Patrol, 827 F. Supp. 402, 403-04 (S.D. Miss. 1993) (finding Mississippi Highway Safety Patrol to be arm of the state).

Although in Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities," Nelson v. Univ. of Texas at Dallas, 535 F.3d 318, 320 (5th Cir. 2008), the Ex Parte Young doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought[,]" Puerto Rico Aqueduct, 506 U.S. at 146 (citation omitted). Accordingly, the court lacks jurisdiction over plaintiff's claims against the State of Mississippi, the Mississippi Department of Public Safety, and the Mississippi Highway Patrol are entitled to be dismissed.

Plaintiff has apparently come to recognize this, as evidenced by his motion to amend. By that motion, he seeks to drop the State defendants, and to add Governor Phil Bryant, in his official capacity. The State defendants oppose the addition of Governor Bryant, arguing that the proposed amendment is futile, since the claims plaintiff would assert against Governor Bryant would fail as a matter of law for the same reasons Commissioner Santa Cruz has contended for dismissal of the claims against him. See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.") (citing Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765, 771 (5th Cir. 1999)).

In his motion for judgment on the pleadings, Commissioner Santa Cruz makes the following arguments: (1) plaintiff lacks standing to pursue his claims for declaratory and injunctive relief, and those claims are moot; (2) plaintiff's claim for damages and claims based on state law are barred by the Eleventh Amendment; (3) plaintiff fails to state a claim upon which relief can be granted because (a) the Implied Consent Law provides due process of law, (b) the use of the Intoxilyzer 8000 is constitutional, and (c) there is no plausible basis for any claim by plaintiff against Santa Cruz for alleged unlawful arrest, incarceration and prosecution.

In his response to the motion, plaintiff implies that he does not seek damages from Santa Cruz (notwithstanding that his complaint includes a demand for such damages from all defendants). Clearly, any such claim would be barred by the Eleventh Amendment. See Chrissy F. ex rel. Medley v. Mississippi Dep't of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991) ("[The] Eleventh Amendment bars claims for damages not only when the claim is directed against the state but also when the claimant seeks damages from the State's officers in their official capacities and the damages would be paid out of the state treasury."). Moreover, while plaintiff does not address the issue, Santa Cruz is patently correct that the Eleventh Amendment also bars any official capacity claim against him based on state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (holding that Eleventh Amendment deprives federal courts of jurisdiction over claims for injunctive relief against state officials based on state law).

Because of the Ex Parte Young exception, the Eleventh Amendment is no bar to plaintiff's claims against Santa Cruz for injunctive relief and declaratory relief in his official capacity. Santa Cruz contends, though, that plaintiff lacks standing to pursue these claims, and relatedly, that the claims are moot. He is correct.

"The standing requirement originates from the Constitution confining federal courts to 'Cases' and 'Controversies.'" Time Warner Cable, Inc. v. Hudson, 667 F.3d 630, 635-636 (5th Cir. 2012) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (standing "set[s] apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III")). To establish constitutional standing, a plaintiff must satisfy three elements:

> First, the plaintiff must have suffered an "injury in fact" ... an invasion of a legally protected interest which is ... concrete and particularized ... not "conjectural" or "hypothetical" .... Second, there must be a causal connection between the injury and the conduct complained of .... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560-61, 112 S. Ct. 2130 (internal citation omitted). With respect to the third requirement, a plaintiff seeking injunctive or declaratory relief must prove not only an injury, but also "a real and immediate threat of future injury in order to satisfy the 'injury in fact' requirement." Eubank v. Leslie, 210 Fed. Appx. 837, 842, 2006 WL 3627005, 3 (11th Cir. 2006) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102-05, 103 S. Ct. 1660, 1665-67, 75 L. Ed. 2d 675 (1983). That is,

> [b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury. [City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)]. Logically, "a prospective remedy will provide

8

> no relief for an injury that is, and likely will remain, entirely in the past." American Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992). Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," O'Shea v. Littleton, 414 U.S. 488, 496, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102, 103 S. Ct. at 1665 (alterations in original) (quoting O'Shea, 414 U.S. at 496, 94 S. Ct. at 676).

Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994).

"[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal...." Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975). Standing requirements, however, "are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

Closely related to the standing requirement is the mootness doctrine, which "requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." Rocky v. King, 900 F.2d 864, 866 (5th Cir. 1990). An action is moot where the controversy is no longer live, or the parties lack a personal stake in its outcome. Id. at 867. "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation

9

(standing) must continue throughout its existence (mootness).'" Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)). As with standing, an action becomes moot unless there remains throughout the litigation a real and immediate threat of repeated injury. However, there are exceptions to the operation of the mootness doctrine, one of which applies to "'the class of controversies capable of repetition, yet evading review.'" Id. (quoting First Nat'l Bank v. Bellotti, 435 U.S. 765, 774, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978)). Outside the class action context, the "capable of repetition, yet evading review" exception applies only in exceptional situations where the following two circumstances are simultaneously present: "[T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" id. (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975)). This doctrine "applies . . . only when repetition is likely to embroil the same parties to the dispute." Robinson v. City of Chicago, 868 F.2d 959, 967 (7th Cir. 1989).

Santa Cruz submits that in this case, whether analyzed in terms of standing or mootness, plaintiff's primary failure is that

he cannot show a real and immediate threat that he will again be stopped and arrested for DUI, that he will refuse to consent to a breathalyzer test and that Department of Public Safety will consequently suspend his driver's license.  In City of Los Angeles v. Lyons, the plaintiff alleged that he was stopped for a traffic violation, and that although he offered no resistance or provocation, the officers applied a chokehold that rendered him unconscious and seriously injured him.  Id. at 99, 103 S. Ct. at 1664.  Lyons sued for damages and an injunction to bar future police use of chokeholds absent an immediate threat of deadly force.  Id. at 98, 103 S. Ct. at 1663.  The Supreme Court concluded Lyons lacked standing to pursue injunctive relief because, even though he alleged that Los Angeles police officers "routinely appl[ied] chokeholds in situations where they are not threatened by the use of deadly force," id. at 105, 103 S. Ct. at 1666, he did not, and could not credibly establish that he was "realistically threatened by a repetition of his experience." Id. at 106, 103 S. Ct. at 1667.  The Court noted that although other instances of illegally applying a chokehold might occur, this fact did not establish an immediate threat of harm necessary for standing:

> As we have said, however, it is no more than conjecture
> to suggest that in every instance of a traffic stop,
> arrest, or other encounter between the police and a
> citizen, the police will act unconstitutionally and
> inflict injury without provocation or legal excuse.  And

11

> it is surely no more than speculation to assert either
> that Lyons himself will again be involved in one of
> those unfortunate instances, or that he will be arrested
> in the future and provoke the use of a chokehold by
> resisting arrest, attempting to escape, or threatening
> deadly force or serious bodily injury.

Id. at 108, 103 S. Ct. at 1668.

Applying <u>Lyons</u>' reasoning, the court in <u>Yachnin v. Village of Libertyville</u>, 803 F. Supp. 2d 844, 850 (N.D. Ill. 2011), held that the plaintiff Yachnin lacked standing to obtain an injunction against a municipality's policy of requiring motorists to submit to a breathalyzer or blood test on certain weekends. In <u>Yachnin</u>, the plaintiff alleged that at the time she was stopped by a Village police officer, she was obeying all traffic laws, had not committed any moving violations and her car was in good and proper working order. <u>Id.</u> at 848. She was arrested following a field sobriety test, and although first told that her license would be automatically suspended if she refused a breathalyzer, she was also told that the Village had established a "No Refusal Weekend" policy, so that on certain weekends, including the one on which she was stopped, no motorist would be permitted to refuse a breathalyzer test. <u>Id</u>. Notwithstanding this, Yachnin refused to submit to a breathalyzer test. <u>Id.</u> The officer obtained a search warrant to compel her to submit to a breathalzyer or provide a blood sample, but she still refused and was charged with contempt.

The charge was later dismissed, and Yachnin sued to enjoin the "No Refusal Weekend" policy. Id.

The court concluded that Yachnin lacked standing as she was "unable to demonstrate that it is likely, rather than speculative or hypothetical, that she will be subjected to a compelled breathalyzer or blood sample test in the future." Id. at 850. The court found that Yachnin "present[ed] herself as a law-abiding citizen and d[id] not allege that she plans to drive while intoxicated beyond the legal limit in the future." Id. (citation omitted). The court concluded that Yachnin could not claim she satisfied the "capable of repetition yet evading review" doctrine, which "applies ... only when repetition is likely to embroil the same parties to the dispute," id. (citation omitted), because she "[had] not demonstrated a likelihood that *she* [would] be arrested for DUI in the future because nothing in the record [suggested] that she [was] a repeat offender," id.

In another case relied on by Santa Cruz, Brotherhood of Locomotive Engineers v. Jones, Civ. A. No. 92-2868, 1992 WL 370126 (E.D. La. Dec. 1, 1992), the court held that the plaintiff lacked standing to seek an injunction "prohibiting the defendants from conducting alcohol and drug testing of railroad employees except as provided by federal regulation." Id. at *1-2. Finding the case was controlled by Lyons, the court concluded that the plaintiff could not "establish a real and immediate threat that he

13

would again be tested under these circumstances" because that would require that he "again be involved in a train collision" and be subjected to a test "without the presence of additional factors indicating impairment." Id. "The risk posed by the occurrence of these events is too speculative." Id.

In the case at bar, plaintiff submits that he meets the standing requirement, and that the mootness doctrine is inapplicable, because "[t]he continued use of the Intoxilyzer 8000 and the serious repercussions that follow a refusal to submit to a breathalyzer test more than satisfies the probability that [he] could be subjected to the same government action again." In the court's view, however, plaintiff's assertion that the facts suggest a "a probability that [he] *could* be subjected to the same government action again" says nothing more than that it is *possible* plaintiff could be subjected to the same action again. Plaintiff has not claimed or shown that he is *likely* to be subjected to the same government action again, as is required under Lyons. That is, in order to have standing to pursue the requested declaratory and injunctive relief and to evade the application of the mootness doctrine, plaintiff has the burden to show there is a reasonable likelihood that in the immediate future he will be stopped and arrested for DUI and that his driver's license will be suspended by Department of Public Safety on account of his refusal to submit to a breath test on the

14

Intoxilyzer 8000.  Cf. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions.").  Any assertion by plaintiff that such a scenario is likely to recur is far too speculative to satisfy the injury-in-fact requirement of the standing doctrine, or the "capable of repetition yet evading review" exception to the mootness doctrine.  Indeed, as defendant notes, in the absence of some basis to conclude otherwise, the court must assume that plaintiff will abide by the law and not be arrested for DUI again.  See O'Shea, 414 U.S. at 497, 94 S. Ct. at 676 (stating that "attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture," and that "[w]e assume that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners"); Campbell v. Miller, 373 F.3d 834, 836 (7th Cir. 2004) ("Only if [plaintiff] is apt to be arrested and searched again would prospective relief be apt, and nothing in this record suggests that [plaintiff] is a repeat offender").

For these reasons, the court concludes plaintiff lacks standing to pursue his claims against Santa Cruz for injunctive

15

and declaratory relief.  Further, based on all of the foregoing, the court concludes that Santa Cruz's motion for judgment on the pleadings is well taken as to all plaintiff's claims against him.

That brings the court back to plaintiff's motion to amend to add Governor Bryant as a defendant.  Plaintiff proposes to allege against Governor Bryant in his official capacity the very same claims he alleged against Santa Cruz in his official capacity. The claims are no more viable against Governor Bryant than they are against Santa Cruz, and therefore, the motion to amend will be denied.

Based on the foregoing, it is ordered that the State defendants' motion to dismiss is granted; that Santa Cruz's motion for judgment on the pleadings is granted; and that plaintiff's motion to amend to add Governor Bryant is denied.

SO ORDERED this 11th day of May, 2012.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE