UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


CHARLES DWIGHT WHITFIELD                                        PLAINTIFF


VS.                                CIVIL ACTION NO. 3:11CV744TSL-JMR

CITY OF RIDGELAND, AND
DANIEL SOTO, IN HIS OFFICIAL
AND INDIVIDUAL CAPACITY                                        DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on cross-motions of plaintiff

Charles Dwight Whitfield and of defendants City of Ridgeland and

Daniel Soto, in his official and individual capacities,[1] for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  These motions have been fully briefed and the court,

having considered the memoranda of authorities, together with

attachments submitted by the parties, concludes that plaintiff's

motion should be denied; that the City of Ridgeland's motion

should be granted; and that Daniel Soto's motion in his individual

capacity should be granted in part and denied in part.

---

[1]     In addition to naming the City, plaintiff's complaint
names the Ridgeland Police Department as a defendant.  However, as
defendants note, a police department simply is a department within
a city and cannot be sued separately.  See Darby v. Pasadena
Police Dept., 939 F.2d 311, 314 (5th Cir. 1991).
        Moreover, the official capacity claim against Soto is the
same as a claim against the City itself.  See Will v. Michigan
Dep't of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d
45 (1989)("a suit against a state official in his or her official
capacity ... is no different from a suit against the [government
entity] itself").  Accordingly, references herein to the City
include Soto in his official capacity.

This case arises from plaintiff Whitfield's arrest by then Police Officer Daniel Soto on December 7, 2008 in the City of Ridgeland, Mississippi and his subsequent prosecution by the City of Ridgeland.  According to the allegations of Whitfield's complaint, around 2:35 a.m., Officer Soto, using the pretext of speeding, stopped plaintiff's vehicle.  Plaintiff maintains he was not speeding, and that Soto's assertion that he was traveling 55 miles per hour in a 40 mile-per-hour zone, was false.  Plaintiff alleges that in light of that false assertion, he chose to exercise his right to remain silent and refused the officer's request that he submit to a breathalyzer or a field sobriety test, and was immediately arrested for driving under the influence and speeding.  He was transported to the police station, where he was booked for speeding, failing to produce proof of insurance and driving under the influence.  He bonded out of jail later than morning.

Based on plaintiff's refusal to submit to a breathalyzer test after being arrested, his driver's license was automatically suspended for ninety days pursuant to Mississippi's Implied Consent Law, Miss. Code Ann. § 63-11-5(1).  On April 14, 2009, plaintiff was tried and convicted in municipal court of DUI first and speeding.  Plaintiff appealed his conviction to the County Court of Madison County, where he was tried *de novo* on September 14, 2009 and again convicted of the charges.  Plaintiff asserts

that Officer Soto falsely testified at both trials that there was no video evidence of the stop and arrest.[2]  However, following the second trial, plaintiff moved for a new trial and in conjunction with the motion, on January 26, 2009, served a subpoena on Ridgeland Police Chief Jimmy Houston for any and all video relating to plaintiff's arrest.  The police department's evidence officer, Greg Phillips, responded to the subpoena that same day

---

[2]     There is no transcript of the municipal court proceedings as the City of Ridgeland municipal court is not a court of record.  Plaintiff has submitted in support of his motion an affidavit of Chuck McRae, who represents him in this case and who also represented him in the subject criminal proceedings.  In his affidavit, Mr. McRae purports to describe Soto's testimony in municipal court, as well as in county court, which is a court of record.

Mr. McRae relates in his affidavit that Officer Soto testified in plaintiff's municipal court trial that there was no video evidence of the traffic stop, and that Soto testified in county court "exactly as he had previously."  However, the record from county court shows that Soto did not testify in county court that there was no video evidence of the stop.  Instead, Soto maintained that he did not know whether there was video evidence of the stop.  Mr. McRae's affidavit thus cannot be correct, for if Soto testified in municipal court exactly as he did in county court, then his testimony was not that there was no video evidence but that he did not know whether there was video evidence of the stop.  Thus, even if Mr. McRae's affidavit were material on this issue – and in the court's opinion, it is not, see infra at p. 23 – it would be unhelpful based on its obvious internal inconsistency.

Defendants have moved to strike the McRae affidavit, contending that it is, in whole or in part, (1) not based on personal knowledge; (2) contains hearsay; (3) violates the best evidence rule; (4) contains improper lay opinions; and (5) contains improper legal argument.  Even if the court were to consider the affidavit in evaluating plaintiff's motion, it would still conclude that plaintiff was not entitled to summary judgment.  Accordingly, while there may be merit to some or all of defendants' arguments regarding the affidavit, the motion to strike will be denied as moot.

and produced to plaintiff's counsel a copy of the video from the night of plaintiff's arrest.  That video contradicted, in part, Officer Soto's testimony.  The prosecutor, Boty McDonald, after learning that a video of the arrest existed, did not oppose plaintiff's request that the county court dismiss plaintiff's speeding and DUI cases, and the charges against plaintiff were dismissed.[3]

Plaintiff thereafter filed the present action against the City of Ridgeland and Officer Soto, in his official and individual capacities, and against the State of Mississippi, Mississippi Department of Public Safety, Mississippi Highway Patrol and Commissioner Santa Cruz, in his official capacity, asserting putative claims under 42 U.S.C. § 1983 for violation of his rights under the "Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments."  By memorandum opinion and order entered May 12, 2012, the court dismissed the State defendants, leaving as defendants the City of Ridgeland and Officer Soto, in his official and individual capacities.  The parties have now filed cross-motions for summary judgment.

Defendants argue in their motion that all plaintiff's claims against them are due to be dismissed, as the undisputed facts established by the record evidence do not demonstrate a

---

[3]    As a result of this, and another incident involving his falsification of an incident report, Soto was given the opportunity to resign or be terminated.  He resigned.

constitutional violation.  The City and Officer Soto in his
official capacity further argue that even if plaintiff could
create a genuine issue of material fact as to the occurrence of a
constitutional violation, he still could not prevail against them
since he has no evidence that any such violation resulted from an
official policy or custom of the City.  Finally, Soto maintains
that even if plaintiff could prove a constitutional violation,
summary judgment is in order on the claims against him in his
individual capacity on the basis of qualified immunity.

The Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures."  U.S. Const. amend. IV.
Plaintiff has asserted a claim for illegal arrest and detention in
violation of the Fourth Amendment.  "Traffic stops are seizures
within the meaning of the Fourth Amendment."  United States v.
Luckey, 402 Fed. Appx. 889 (5th Cir. 2010) (citing United States v.
Grant, 349 F.3d 192, 196 (5th Cir. 2003)).  In United States v.
Brigham, 382 F.3d 500 (5th Cir. 2004) (en banc), the Fifth Circuit
observed that "[t]his court, following the Supreme Court, has
treated routine traffic stops, whether justified by probable cause
or a reasonable suspicion of a violation, as Terry stops[,]"
referring, of course, to standards established by the Supreme
Court in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d

5

889 (1968). Brigham, 382 F.3d at 506 (citing Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) (per curiam); and United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999)). "Pursuant to Terry, the legality of police investigatory stops is tested in two parts. Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Id. at 506-07 (citing Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879). The officer's subjective motives for the stop are irrelevant. United States v. Benavides, 291 Fed. Appx. 603, 607 (5th Cir. 2008) (citing United States v. Sanchez-Pena, 336 F.3d 431, 436-37 (5th Cir. 2003)).

Defendants assert that Officer Soto had probable cause for the initial stop of plaintiff's vehicle because the radar in Soto's patrol vehicle indicated that plaintiff was traveling 55 miles per hour in a 40 mile-per-hour-zone. Plaintiff denies that he was speeding and maintains that he was stopped at a traffic light when the officer's vehicle approached him from the opposite direction. He insists that Officer Soto could not possibly have clocked him at 55 miles per hour since his vehicle was not even moving when Officer Soto first encountered him. However, the video of the stop, which has been offered by defendants as an

6

exhibit, clearly contradicts plaintiff's version of these facts. The video shows that the officer's vehicle was traveling north on Old Canton Road and passed through the traffic light at Williams Boulevard just as the light was turning from green to yellow. As the patrol vehicle passed under the light, plaintiff's vehicle came into view, approaching the traffic light from the opposite direction. The video shows that Officer Soto made a U-turn after passing plaintiff's moving vehicle and that he pulled up behind plaintiff as plaintiff was coming to a stop at the traffic light. Contrary to plaintiff's testimony, the video proves that when Officer Soto drove past plaintiff, plaintiff's car was moving and that as plaintiff came to a stop at the red light, Officer Soto was behind him with his lights activated. Thus, plaintiff's contention that the officer could only have clocked him at "0" since he was at a complete stop is flatly contradicted by the video evidence. See Scott v. Harris, 550 U.S. 372, 380-381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) (describing the plaintiff's version of events as "visible fiction" and "utterly discredited" by facts depicted in videotape and holding that when one party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011) (stating that "[a]lthough we review evidence in

7

the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene").

Although the video proves that plaintiff's vehicle was moving when Officer Soto first encountered it, it is impossible to discern from the video the speed at which the vehicle was moving. In his testimony, plaintiff maintained he was not speeding, explaining that it is his practice to drive at or near the posted speed limit in Ridgeland. Yet plaintiff admitted he did not know how fast he was going as he approached Williams Boulevard; he could only "guess" that it was "probably forty." In the court's opinion, in the face of the officer's testimony that his radar registered that plaintiff's vehicle was traveling at 55 miles per hour, plaintiff's guess is clearly insufficient to create a genuine issue for trial on the issue of whether plaintiff was speeding and the stop thus justified. Defendants' evidence establishes that the officer had probable cause to stop plaintiff for speeding. Accordingly, plaintiff has no viable claim for violation of the Fourth Amendment based on the initial stop. See United States v. Benavides, 291 Fed. Appx. 603, 606-607 (5th Cir. 2008) (recognizing that "[p]olice officers may stop an automobile

when there is probable cause to believe that a traffic violation
has occurred, even if the stop is otherwise pretextual").[4]

Irrespective of whether the initial stop was justified,
plaintiff maintains there was no probable cause for his subsequent
arrest and detention for driving under the influence.  It appears

---

[4]   Since defendants' evidence establishes that plaintiff
was speeding and that there was thus probable cause for the stop
and hence no Fourth Amendment violation, the court is not required
to reach Soto's alternative claim that he is entitled to qualified
immunity as to this claim.  See Ramirez v. Martinez, 716 F.3d 369,
375-76 (5th Cir. 2013).  It is clear, though, that qualified
immunity applies.
      "The doctrine of qualified immunity protects public officials
from liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known." Brown v. Strain, 663
F.3d 245, 249 (5th Cir. 2011) (internal quotation marks omitted).
To determine whether a public official is entitled to qualified
immunity, the court must decide "(1) whether the facts that the
plaintiff has alleged make out a violation of a constitutional
right; and (2) whether the right at issue was clearly established
at the time of the defendant's alleged misconduct." Id. (internal
quotation marks omitted) (citing Pearson v. Callahan, 555 U.S.
223, 230-33, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).  A right
is clearly established when "it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted." Jones v. Lowndes Cnty., Miss., 678 F.3d 344, 351
(5th Cir. 2012) (citation omitted).  Once a defendant has raised
qualified immunity, the burden shifts to the plaintiff to
demonstrate that qualified immunity does not apply.  Id.  If an
officer reasonably but mistakenly believes that probable cause
exists, he is entitled to qualified immunity.  Club Retro, LLC v.
Hilton, 568 F.3d 181, 206 (5th Cir. 2009).
      As to Soto's claim of qualified immunity, the burden is on
plaintiff to prove the absence of probable cause.  As plaintiff
admittedly does not know at what rate of speed he was traveling
when encountered by Officer Soto and could only "guess" that he
was going the speed limit, he has not come forward with sufficient
proof to create a genuine issue for trial on Soto's claim of
qualified immunity with respect to this alleged Fourth Amendment
violation.

to be an "'open question in the Fifth Circuit of whether and to what extent the strictures of <u>Terry</u> ... apply to probable cause traffic stops for arrestable offenses....'" <u>Lockett v. New Orleans City</u>, 607 F.3d 992, 1000-01 (5th Cir. 2010) (quoting lower court opinion and finding it unnecessary to address the issue); <u>Brigham</u>, 382 F.3d at 506 n.4 (finding it "important to note that at least one of our sister circuits has recently suggested that different constitutional standards may apply to stops based on probable cause"); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 n.29, 104 S. Ct. 3138, 3150 n.29, 82 L. Ed. 2d 317 (1984) ("We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a <u>Terry</u> stop.").

"Whether an arrest is illegal ... hinges on the absence of probable cause" and as such, there is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause. <u>Sorenson v. Ferrie</u>, 134 F.3d. 325 328 (5th Cir. 1998). The same probable cause requirement exists for a claim of false imprisonment. <u>Brown v. Lyford</u>, 243 F.3d 185, 189 (5th Cir. 2001). In order to make a lawful arrest, an officer must have probable cause to believe the suspect committed a crime. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed

or was committing an offense." <u>Flores v. City of Palacios</u>, 381 F.3d 391, 402 (5th Cir. 2004).

Officer Soto claimed in his arrest report and in plaintiff's trials in municipal and county court that upon plaintiff's exiting the vehicle after being stopped, Soto observed plaintiff to be very unsteady on his feet and observed him to stumble backwards and almost trip on a curb in a parking lot.[5]  Soto further claimed that plaintiff was argumentative, his speech was heavily slurred, his pupils were dilated, and he reeked of an intoxicating liquor on his person and his breath.  Soto requested plaintiff to submit to a breath analysis, but plaintiff refused, and he further refused to submit to a field sobriety test, leaving the officer with no alternative but to arrest plaintiff and transport him to jail.

For his part, plaintiff notes the video of the stop belies Soto's claim that plaintiff was unsteady on his feet or tripped on a curb.  In fact, Soto admitted in his deposition that after reviewing the video, he realized that his testimony that plaintiff was unsteady and that he stumbled or tripped was inconsistent with the video and was "a mistake" on his part.  Soto has continued to maintain that plaintiff's speech was slurred, that his eyes were

---

[5]     Although there is no record of the municipal court trial, there appears to be no dispute as to the substance of Officer Soto's testimony regarding what he claimed to have observed of plaintiff's condition and demeanor at the time of the stop.

bloodshot, dilated and glassy, and that his clothing and breath smelled strongly of alcohol.  Plaintiff, on the other hand, has consistently denied that he had consumed any alcohol on the night/morning in question; and while he admits that his clothing smelled of alcohol since his date spilled a drink on him (a fact which he explained to Officer Soto at the time of the stop), he has consistently denied all of Soto's other allegations regarding his alleged condition/demeanor at the time of the stop.

Neither party's version of these facts is confirmed or refuted by the video, based on the court's review of the video. And in the court's view, the evidence presented by plaintiff might be sufficient to create a genuine issue of material fact as to whether there was probable cause for his arrest for driving under the influence.  However, the evidence establishes that there was probable cause to arrest plaintiff for speeding, and consequently, there was no Fourth Amendment violation.

In this regard, the Fifth Circuit has explained as follows:

> Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest.  Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995).  Thus, we have found that "[i]f there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails." Id.

Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001).  In Price, the plaintiff was arrested both for arson and for driving a vehicle

without license tags.  He was charged with and found guilty of

driving a vehicle without license tags and did not contest that

conviction.  However, he asserted a claim for false arrest based

on his arrest for arson.  The court rejected this claim, stating,

> Although [the plaintiff] insists that driving a vehicle
> without license tags was a minor offense that only
> resulted in a small fine, and was unrelated to the
> arrest for arson, [the officer] was entitled to arrest
> [the plaintiff] for the misdemeanor.  Mississippi law
> expressly authorizes "[a]ny sheriff, deputy sheriff or
> municipal law enforcement officer ... to arrest, without
> warrant, any person operating, or causing to be
> operated, any motor vehicle contrary to the provisions
> of this article [requiring license tag and decal],
> within the limits of their respective jurisdiction."
> Miss. Code. Ann. § 27-19-133.  The statute allows up to
> thirty days imprisonment for a violation.  Miss. Code
> Ann. § 27-19-131.

Id.  The court continued, observing,

> It does not help the plaintiff's argument that the
> Supreme Court recently found that warrantless arrests
> for misdemeanor violations committed in the presence of
> the officer do not violate the Fourth Amendment.
> Atwater v. City of Lago Vista, 532 U.S. 318, 121 S. Ct.
> 1536, 149 L. Ed. 2d 549 (2001) (finding an arrest for
> the failure to wear a seatbelt constitutional and
> holding that "an officer [who] has probable cause to
> believe that an individual has committed even a very
> minor criminal offense in his presence, ... may, without
> violating the Fourth Amendment, arrest the offender.").
> Thus, [the officer] did not violate the Fourth Amendment
> by arresting [the plaintiff] on the misdemeanor charge.

Id at 369-70.  The court in Price concluded that because the

officer had probable cause to believe the plaintiff was driving a

vehicle without license tags, the officer did not violate the

plaintiff's constitutional right to be free from arrest without

13

probable cause, and the officer was thus entitled to qualified immunity on the plaintiff's claim for false arrest. Id. See also Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (stating that "[e]ven if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense."); Toler v. Steed, No. 198CV224DA, 1999 WL 33537150, 3 (N.D. Miss. July 29, 1999) (recognizing authority of Mississippi Highway Patrol to arrest motorist for speeding and concluding that qualified immunity barred § 1983 claim for false arrest for switching tags and disobeying a lawful order where driver could not show that officer lacked probable cause to arrest him for speeding).

In the case at bar, the evidence establishes that Officer Soto had clocked plaintiff at 55 miles per hour in a 40 mile per hour zone. He thus had probable cause to arrest plaintiff for speeding. See Miss. Code Ann. § 63-9-23 (recognizing authority of police officers to make arrests without a warrant for violations of Chapters 3, 5 and 7 of this title for offenses committed in their presence); Miss. Code Ann. § 63-3-201 (making speeding a misdemeanor). And as there was probable cause to arrest plaintiff

14

for speeding, "then the arrest was supported by probable cause, and the claim for false arrest fails." Price, 265 F.3d at 369.[6]

### Fourteenth Amendment Due Process

Plaintiff has alleged a claim for violation of his Fourteenth Amendment right to due process based on Officer Soto's alleged perjured testimony that resulted in plaintiff's wrongful conviction.[7] Specifically, plaintiff alleges he was wrongly

---

[6]   The City and Soto in his official capacity also argue, in the alternative, that there can be no municipal liability for any alleged Fourth Amendment violation as there is no municipal "policy statement, ordinance, regulation" or other official city policy calling for stops without reasonable suspicion or probable cause or arrests without probable cause. Indeed, plaintiff claims that in making the stop and arrest, Soto violated numerous City policies. However, he also appears to take the position that since the City was aware of and took no action with respect to Soto's violations of policy, then the violations became City policy. The court need not consider this argument further as there is no evidence that the City was aware of any violation by Soto regarding the stop or arrest/detention of plaintiff.

[7]   Plaintiff refers in his complaint to the "blatant violation of [his] right to due process ... through the malicious prosecution of the unsubstantiated charges stemming from his traffic stop...." As defendants note in their motion, the Fifth Circuit held in Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (en banc), that "no ... freestanding constitutional right to be free from malicious prosecution exists." Id. at 945; see id. at 953 ("[C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim."). However, the court went on to explain that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." Id. at 953. These claims of "lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42

convicted based on Officer Soto's false testimony relating to the
facts and circumstances of the stop and plaintiff's condition/
demeanor at the time of the stop and his false testimony that
there was no video of the stop.  In Castellano v. Fragozo, 352
F.3d 939 (5th Cir. 2003) (en banc), the Fifth Circuit, while
recognizing that "'a criminal prosecution based on perjured
testimony ... simply does not comport with the requirements of the
Due Process Clause[,]'" id. at 958 (quoting Albright v. Oliver,
510 U.S. at 300, 114 S. Ct. 807, 127 L. Ed 2d 114 (Stevens, J.,
dissenting)), also acknowledged the "well-established rule that
prosecutors and witnesses, including police officers, have
absolute immunity for their testimony at trial[,]" id. (citing
Briscoe v. LaHue, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96
(1983)).  Thus, even assuming Soto knowingly gave false testimony
at plaintiff's trials in municipal court and county court, he is
absolutely immune from a § 1983 claim based on such perjured
testimony.  See Harris v. Rivera, Civil Action No. 3:11-CV-3013-D,
2013 WL 246709, 11-12 (N.D. Tex. Jan. 23, 2013) (holding that
because of doctrine of absolute testimonial immunity, the
plaintiffs could not plausibly plead a due process violation based

---

U.S.C. § 1983."  Id. at 953-54.  Thus, to the extent that
plaintiff complains merely that defendants caused charges to be
filed without probable cause, he states no constitutional claim.
He can state a claim only to the extent he alleges that defendants
violated specific constitutional rights in connection with a
malicious prosecution.  Id. at 945.

on allegedly false or perjured testimony given during criminal trial) (citing Briscoe and Casetllano); Benavides v. City of Corpus Christi, Tex., Civil Action No. C-10-121, 2011 WL 835814, 3 (S.D. Tex. Mar. 7, 2011) (holding that "to the extent Plaintiff alleges any of the individual Defendants testified falsely against Plaintiff at trial, the Defendants would be immune from liability since '[w]itnesses, including police officers, are ... shielded by absolute immunity from liability for their allegedly perjurious testimony'") (quoting Enlow v. Tishomingo County, 962 F.2d 501, 511 (5th Cir. 1992)).

Plaintiff submits that the City is liable for knowingly presenting perjured testimony.  However, there is no allegation or proof of any City policy or custom of presenting perjured testimony.  The principles of law governing municipal liability under § 1983 are familiar:

> "Under § 1983, a municipality or local governmental entity such ... may be held liable only for acts for which it is actually responsible." Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (noting that a municipality cannot be held liable under § 1983 on a respondeat superior theory); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("Congress did not intend municipalities to be held liable [for purposes of § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Consequently, "[t]o establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010) (citation and internal quotation marks omitted).

17

>     To this end, "[a] plaintiff must identify: (1) an
>     official policy (or custom), of which (2) a policymaker
>     can be charged with actual or constructive knowledge,
>     and (3) a constitutional violation whose 'moving force'
>     is that policy or custom."  Id. at 541-42 (citation and
>     internal quotation marks omitted).  The plaintiff must
>     also "demonstrate that the municipal action was taken
>     with 'deliberate indifference' as to its known or
>     obvious consequences."  Bd. of County Comm'rs of Bryan
>     County, Okl. v. Brown, 520 U.S. 397, 407, 117 S. Ct.
>     1382, 137 L. Ed. 2d 626 (1997).

Goudeau v. East Baton Rouge Parish School Bd., – Fed. Appx. –,
2013 WL 5514548, 6 (5th Cir. Oct. 7, 2013).  See also Bolton v.
City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008) (stating that
"[t]he fact that a tortfeasor is an employee or an agent of a
municipality is therefore not sufficient for city liability to
attach; the municipality must cause the constitutional tort, which
occurs 'when execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may be
fairly said to represent official policy, inflicts the injury").
"[A] 'custom or policy' of the municipality ... may take the form
of, e.g., a policy statement formally announced by an official
policymaker or a 'persistent widespread practice of city officials
or employees, which, although not authorized by officially adopted
and promulgated policy, is so common and well-settled as to
constitute a custom that fairly represents municipal policy.'"
James v. Dallas Housing Auth., 526 Fed. Appx. 388, 394, 2013 WL
2097571, 5 (5th Cir. 2013) (quoting Monell, 436 U.S. at 694, 98 S.
Ct. 2018).  A plaintiff's "description of a policy or custom and

its relationship to the underlying constitutional violation ...
cannot be conclusory; it must contain specific facts." Beaulieu
v. Lavigne, - Fed. Appx. -, 2013 WL 4478228, 4 (5th Cir. 2013)
(quoting Spiller v. City of Texas City, Police Dept., 130 F.3d
162, 167 (5th Cir. 1997)).  "A policymaker is 'one who takes the
place of the governing body in a designated area of city
administration.'" James, 526 Fed. Appx. at 394 (quoting Webster v.
City of Houston, 735 F.2d 838, 841 (5th Cir. 1984).  "He or she
must 'decide the goals for a particular city function and devise
the means of achieving those goals.'" Id. (quoting Bennett v. City
of Slidell, 728 F.2d 762, 769 (5th Cir. 1984)).

     In his complaint, plaintiff alleges that "[t]he actions of
the defendant Soto giving false testimony is nothing short of
perjury and the other Defendants either knowingly encouraged it or
refused to take action to correct it in this situation...."  He
further alleges that "[n]one of the other Defendants, when
confronted with the false testimony, brought appropriate charges
against Defendant Soto."  And in response to defendants' motion,
he argues that "[d]efendants were perfectly content with
permitting Defendant Soto to commit perjury twice at the detriment
of the Plaintiff...."  However, the only defendant other than Soto
is the City; and plaintiff has not identified in his complaint or
otherwise any alleged policymaker for the City who had actual or
constructive knowledge that Soto's testimony was false.  In this

regard, plaintiff alleges only that "Defendant Daniel Soto and/or others were the governmental officials whose edicts or acts may fairly be said to represent official policy, practices, customs or regulations of the Defendants City of Ridgeland and Ridgeland Police Department."  Clearly, Soto is not a policymaker for the City; and no other policymaker is identified, either in the complaint or in plaintiff's response to defendants' summary judgment motion.  Accordingly, it is clear that the City is entitled to summary judgment on this claim.

Plaintiff further alleges that defendants violated his due process rights not only by testifying falsely that there was no video of the stop but also by failing to produce a copy of the video of the stop to plaintiff, as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  In Brady, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id. 373 U.S. at 87, 83 S. Ct. at 1196–1197.  Thus, under Brady, the government is required to disclose material, exculpatory evidence to a criminal defendant.  United States v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (citing Brady, 373 U.S. at 87, 83 S. Ct. 1194).  "A valid Brady complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is

favorable, and (3) material to the defense." <u>United States v.</u>
<u>Lanford</u>, 838 F.2d 1351, 1355 (5th Cir. 1988) (quoting <u>United</u>
<u>States v. Auten</u>, 632 F.2d 478, 481 (5th Cir. 1980)).  "Impeachment
as well as exculpatory evidence fall within <u>Brady</u>'s purview."
<u>Hernandez v. Terrones</u>, 397 Fed. Appx. 954, 970-971 (5th Cir. 2010)
(citing <u>United States v. Bagley</u>, 473 U.S. 667, 676, 105 S. Ct.
3375, 87 L. Ed. 2d 481 (1985)).  The Fifth Circuit has held that
<u>Brady</u> applies to police officers, as well as to prosecutors, <u>see</u>
<u>Hernandez</u>, 397 Fed. Appx. at 971 (<u>Brady</u> has applied to police
officers since 1994); and it has further held that "a police
officer cannot avail himself of a qualified immunity defense if he
... deliberately conceals exculpatory evidence, for such activity
violates clearly established constitutional rights." <u>Geter v.</u>
<u>Fortenberry</u>, 849 F.2d 1550, 1559 (5th Cir. 1988) (citing <u>Brady</u>).

    Defendants assert that Officer Soto had no obligation or
responsibility to determine whether video of the arrest existed
and, if so, to produce it to plaintiff's counsel.  Regardless of
whether that is correct, the record here contains evidence which
suggests that Officer Soto was actually aware that there was a
video of the stop.  Specifically, video logs maintained by the
City of Ridgeland show that Officer Soto logged into the video
system and viewed the video around 5:00 a.m. on the morning of
plaintiff's arrest.  In his deposition, Officer Soto agreed that
this evidence suggested that he must have viewed the video when he

was preparing his report on the arrest.  Yet he failed to inform

the prosecutor of the existence of the video, even after becoming

aware that the prosecutor was unaware that the video existed.[8]

---

[8]     Defendants note that "[e]vidence is not 'suppressed' if
the defendant 'knows or should know of the essential facts that
would enable him to take advantage of it.'"  United States v.
Runyan, 290 F.3d 223, 246 (5th Cir. 2002) (citing United States v.
Shoher, 555 F. Supp. 346, 352 (S.D.N.Y. 1983)); see also United
States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980)("[W]hen
information is fully available to a defendant at the time of trial
and his only reason for not obtaining and presenting the evidence
to the Court is his lack of reasonable diligence, the defendant
has no Brady claim.").  They further submit that the prosecution's
obligation under Brady is to produce exculpatory evidence to the
accused "upon request" and that a due process violation occurs
only when the prosecution withholds material evidence favorable to
the accused upon request of the accused.  And they argue that
since plaintiff's defense attorney in the criminal actions (who is
also his attorney herein) "knew all along video of the arrest
existed" and yet failed to make a request for same, then plaintiff
has no viable claim based on any Brady violation.
     Since at least 1995, the rule under Brady has been that
"regardless of request, favorable evidence is material, and
constitutional error results from its suppression by the
government, 'if there is a reasonable probability that, had the
evidence been disclosed to the defense, the result of the
proceeding would have been different.'"  Kyles v. Whitley, 514 U.S.
419, 433-434, 115 S. Ct. 1555, 1565, 131 L. Ed. 2d 490 (1995)
(emphasis added) (quoting United States v. Bagley, 473 U.S. 667,
682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985)).
Furthermore, while it is apparent from the evidence of record that
plaintiff's counsel suspected that there was a video of the
arrest, it is unclear from the evidence what steps he took to
obtain the video.  There is evidence that some effort was made.
For example, there was discussion in the county court trial of
subpoenas that would have covered the video; and yet it also seems
that the only subpoena that was actually in the criminal file was
the one served after plaintiff's convictions.  There is also
discussion of discovery requests propounded by the defense; in
this discussion, the county court prosecutor maintained that he
had given the defense "everything we have."  Particularly given
the prosecutor's representations to defense counsel and the county
court that he had produced "everything we have," it would be

Defendants contend that in any event, there was no deliberate concealment by Soto of the video since by the time of plaintiff's trials, Soto simply could not recall whether there was a video of the stop.[9]  They appear to suggest that at worst, he was merely negligent, which will not support liability.  See Porter v. White, No. 06-11769, 2007 WL 1074714, at *11 (11th Cir. Apr. 12, 2007) (holding that "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over Brady material to the prosecution, which in turn causes a defendant to be convicted at a trial that does not meet the fairness requirements imposed by the Due Process Clause, does not amount to a 'deprivation' in the constitutional sense.  Thus, a negligent act or omission cannot provide a basis for liability in a § 1983 action seeking compensation for loss of liberty occasioned by a Brady violation.").  In the court's opinion, however, there is a genuine issue of fact as to whether Soto intentionally concealed the

difficult for this court to find in a summary judgment setting that either that plaintiff's criminal defense counsel knew or should have known that the video existed or that he failed to make an effort to obtain any video of the stop/arrest that may have existed.

[9]     In his affidavit, plaintiff's counsel asserts that Soto affirmatively claimed in municipal court that there was no video of the stop.  For purposes of the present motion, it is immaterial whether Soto testified that there was no video of the stop or simply that he could not recall whether a video of the stop existed.  In either event, there is a genuine issue of material fact, given the evidence that Soto knew that a video existed.

23

video.  Accordingly, Soto is not entitled to summary judgment on this claim.[10]

As for the City, there is no allegation in the complaint – not even a conclusory allegation – regarding any City policy or custom of failing to produce exculpatory evidence.[11]  Neither is there any argument in plaintiff's response directed to the existence of any such policy or custom.  Accordingly, summary judgment will be granted for the City on this claim.

In his complaint, plaintiff alludes to a claim for excessive force.  The Fourth Amendment's "protection against unreasonable search and seizures requires that officers refrain from using excessive force, that is, more force than is reasonably necessary, when effectuating an arrest."  United States v. Brugman, 364 F.3d 613, 616 (5th Cir. 2004) (citation omitted).  "It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the [Fourth Amendment], a

_____

[10]   Just as Soto is not entitled to summary judgment on this claim, plaintiff has not demonstrated that he is entitled to summary judgment on this claim.  There are genuine issues of material fact that preclude summary judgment for either party on this claim.

[11]   Plaintiff points out in his response that in July 2009, Ridgeland Police Chief Jimmy Houston learned that in connection with the DUI arrest of another individual, the video of the stop revealed that Soto had falsified information in his report regarding the basis of the arrest.  That incident does not bear on any relevant City policy as it did not involve any perjured testimony or failure to produce Brady material.

plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Bazan v. Hidalgo Cnty., 246 F.3d 481, 487 (5th Cir. 2001). Plaintiff has neither alleged any facts nor presented any evidence in support of an excessive force claim. The only physical contact or force plaintiff has identified is Officer Soto's placing handcuffs on him and placing him in the backseat of the patrol car. As matter of law, this does not constitute excessive force.

### Fifth, Sixth and Eighth Amendments

In addition to his claims for violations of the Fourth and Fourteenth Amendments, plaintiff's complaint references claims for violation of his rights under the Fifth, Sixth and Eighth Amendments. These claims will be dismissed.

"[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government." Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996). As there was no involvement by the federal government and no actions taken by any federal agency, plaintiff has no cognizable Fifth Amendment claim.

In his complaint, plaintiff has not identified a basis for a claim against the City for violation of his Sixth Amendment rights. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy
> the right to a speedy and public trial, by an impartial
> jury of the State and district wherein the crime shall
> have been committed, which district shall have been
> previously ascertained by law, and to be informed of the
> nature and cause of the accusation; to be confronted
> with the witnesses against him; to have compulsory
> process for obtaining witnesses in his favor, and to
> have the Assistance of Counsel for his defense.

None of plaintiff's factual allegations implicate a violation of any of these rights.[12]  In his response to defendants' motion, plaintiff seemingly takes the position that his Sixth Amendment speedy trial right was violated since his initial arrest occurred on December 7, 2008 and yet "it was not until March of 2010 before Plaintiff could be fully cleared upon discovery of the video."  As plaintiff was tried less than five months after has arrest, there is no basis for his alleging a speedy trial violation.  See Ellis v. State, – So. 3d –, 2013 WL 5789231, 2 (Miss. Ct. App. 2013) (explaining that statutory right to speedy trial requires that accused be brought to trial within 270 days of arraignment, and that constitutional right to speedy trial is

---

[12]     In connection with a challenge to the constitutionality of Mississippi's Implied Consent Law, plaintiff's complaint refers to a violation of his right to confront his accusers.  That claim has been dismissed and is no longer before the court.
      Plaintiff's claims relating to the City's use of the Intoxilyzer 8000 have also been dismissed, and thus he implicitly concedes in his response that his causes of action under 42 U.S.C. §§ 1985 and 1986, which were also based on the use of the Intoxilyzer 8000, are due to be dismissed.

26

potentially implicated only in the case of a delay of eight months or longer).

Plaintiff complains of a violation of the Eighth Amendment; and yet the Fifth Circuit consistently has held that the protections of the Eighth Amendment against cruel and unusual punishment apply only to convicted inmates, not suspects or pretrial detainees.  See <u>Grabowski v. Jackson County Public Defenders Office</u>, 47 F.3d 1386, 1395 (5th Cir. 1995).

<u>Conclusion</u>

Based on all of the foregoing, it is ordered that plaintiff's motion for summary judgment is denied.  It is further ordered that the motion by the City and Daniel Soto in his official capacity is granted.  Finally, it is ordered that the motion of Daniel Soto in his individual capacity is granted, except as to plaintiff's claim for a Fourth Amendment due process violation based on his failure to disclose and/or concealment of <u>Brady</u> material.

SO ORDERED this 17th day of December, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE